### BYRNE v. EASTMANS CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. March 25, 1898.)

INJURY TO EMPLOYE—NEGLIGENCE OF FELLOW SERVANT.

    In an action to recover damages sustained by plaintiff while engaged in "shoving beef" in defendant's establishment, it appeared that the sides of beef from the slaughter house were placed on hooks attached to wheels, which ran on metal tracks, and that when these hooks and wheels had been thus used they were sent back to the slaughter house to be reused as required. On the occasion in question one of these wheels, which was obviously defective and unfit for use, slipped from the track, and the beef attached to it fell upon and injured the plaintiff. There was no evidence that defendant had failed to employ proper persons to select the hooks and wheels to be used from the stock on hand, or had failed to supply enough perfect hooks and wheels. *Held,* that the use of the defective hook and wheel was due to the negligence of a fellow servant, and that defendant was not liable.

    O'Brien, J., dissenting.

Action by Patrick Byrne against the Eastmans Company of New York. Motion for judgment, and exceptions ordered to be heard in the first instance to the appellate division. Exceptions overruled, and judgment for defendant.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Frederick T. Hill, for plaintiff.

Joseph Fettretch, for defendant.

INGRAHAM, J. The plaintiff had been in the employ of the defendant, a corporation doing business in the city of New York, for

about 19 years. For over two years prior to the 5th of April, 1895, he was engaged in what was called "shoving beef." It seems that the sides of beef were taken from the slaughter house, and placed upon a hook, to which was attached a wheel, which was placed upon a metal track running to an elevator, by which the beef was carried to a cooling room. The plaintiff, at the time of the accident, was engaged in shoving the beef from the scales to the elevator. There were several tracks in the room which were connected with the elevator by switches. These switches were pieces of iron connecting the tracks in the room with the tracks upon the elevator. When the elevator came in place, these switches were thrown down upon the track, and then made the connection between the tracks and the elevator complete. After the elevator was loaded, the switches were knocked up, and the elevator then lowered to the cooling room. There were two men in charge of the switches, whose duty it was to make the connection between the track on the floor and the track in the elevator, and to see that the track was complete when the elevator came in place. The plaintiff said that he had to shove the beef over this track and a switch to the elevator, and that to get it there he had to make what he called "a spring and sudden push." He said that when he took a side of beef from the scales he had "to give it a shove to shove it off the scale"; that at the time of the accident he had pushed the beef over the connection from the scale onto this track, and gave it a shove, and could tell no more after that; that he was somewhere between the scale and the elevator; that the elevator was about 9 or 10 feet from the scales; that he had no trouble with this particular side of beef after he took it and gave it a shove, until it fell upon him and hurt him. It seems that this particular track, with the switches, had been in use for a long time prior to the accident, and on that morning had been used without any defect appearing, and without an accident, the plaintiff testifying that he did not see anything wrong with the track or switch on that morning. Another witness, who was stationed about 5 or 6 feet from the plaintiff at the time of the accident, and saw what happened, said that he saw the side of beef coming down and saw it hit the plaintiff; that the wheel hit him on the head, and knocked him to the ground; that the plaintiff was lying on the ground about midway between the scales and the elevator, right opposite the switch; that it was about 2 feet from the switch to the scales, and the rest of the distance leading to the elevator was on the curved track; that after the side of beef fell it was seen that about 1½ inches of the flange of the wheel was broken off; that the wheel came off between the scales and the elevator about at the point of the switch, and that it was on the curve when it fell; that this wheel and side of beef had come all the way from the slaughtering floor, along that rail, down to the scales, and had been shoved from the switch onto the scales, shoved off the scales over another switch onto the track leading to the elevator, and everything appeared to be all right; that the curve commenced just beyond the scales, and when on the curve the wheel fell. This was the only witness that appears to have seen the accident. The plaintiff's witness also testified that this particular wheel, with the broken flange, would

go all right so far as the track was straight, but that when it was upon the curve it was liable to fall, and that it was upon the curve when it fell off. There does not appear to be any evidence that this particular switch between the scales and the elevator was out of order on this morning in question. One witness testified that the switches generally had been dropping down, and that this fact had been reported to the foreman; that the effect of the dropping down naturally caused a jar in the wheel as the man pushed the beef along; but this witness said that he was then minding his own business, about 14 feet off, and did not see what happened to bring the accident about, and that he did not know anything about this particular switch between the scales and the elevator. It appeared that there were over 66 switches on the floor, and another witness testified generally to the switches in the building, and said that they were in bad condition, so far as he could see; that the track in some places was lower than the switches, and that in some places the switches were lower than the tracks; but this witness testified that he did not know anything about the place at which the plaintiff was working on that day; that it was not his place to work; that he did not know anything about the condition of the switch on that day. It also appeared that, after these hooks, with the wheels upon them, had been used for taking the beef to the cold-storage room, they were put in boxes and sent back to the slaughter house, and kept there in boxes, from which they were taken by the employés of the defendant and used as required. There was no evidence, therefore, to justify a finding by the jury that this particular switch was out of order at the time of the accident, or that the accident was caused by any condition of the switch or track. Evidence that switches in the building generally had been out of order, or in such a condition that there would be a jar in pushing the beef along when the wheels passed over them, in the absence of evidence as to the condition of the particular switch at the point at which the plaintiff was working, would not justify a finding that this particular switch had anything to do with the accident, where all the witnesses for the plaintiff, including the plaintiff himself, testified that on the morning in question this track appeared to be in good condition, and had been in constant use, without anything indicating that it was in an unsafe condition. This is especially so when it appeared without contradiction that the wheel attached to the hook that fell was in such a condition that it was liable to fall while going around the curve which connected the scales with the elevator, and when it was upon this curve that the beef did fall. There is nothing, therefore, that would justify a finding that the condition of the track or switch at this place had anything to do with the accident, or that the injury happened because of any imperfection or lack of repair upon the switch or track. It is apparent, from all the evidence, that the accident happened because of the use of this broken wheel, and that when this wheel came upon the curve leading from the switch to the elevator it fell off. This defect in the wheel was perfectly apparent to any one using it. The defect was not hidden, and only the most casual examination was required to show it, and it was apparent to any workman using it. There is no evidence to show that the de-

fendant was negligent in not employing proper men to do the work of selecting these hooks from the receptacle in which they were stored for use upon this particular occasion, or that there was not a sufficient supply of perfect hooks and wheels for the workmen to use. Any one whose duty it was to take the hooks from this receptacle, and put them upon the track, could, with the slightest inspection, have · discovered that this wheel had been broken and was not in a fit condition to be used. The fact that the workmen taking the hooks from the box, and putting them upon the track, would have to look up to observe its condition, because of the location of the box and the track, did not excuse such workmen from looking when engaged in the performance of the duty in placing the hooks upon the track. The fact that this hook and wheel were used when they should not have been was entirely due to the negligence of the employé who selected this particular wheel for use upon this particular occasion in question, and that negligence was the negligence of a fellow servant of the plaintiff, for which the defendant was not liable. The burden of proof is upon the plaintiff to show that the accident was caused by a neglect of a duty that the defendant owed to the plaintiff, and the evidence clearly established that the accident was caused by the negligence of a fellow servant of the plaintiff for which the defendant was not liable.

The exceptions should therefore be overruled, and judgment ordered for defendant, with costs.

VAN BRUNT, P. J., and BARRETT and RUMSEY, JJ., concur. O'BRIEN, J., dissents.